## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TED MCCRACKEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 07-CV-2018 |
| FORD MOTOR CO. et al., | : | |
| Defendants. | : | |

## **EXPLANATION AND ORDER**

**I.     Background**

Since 1972, Plaintiff Ted McCracken ("McCracken" or "Plaintiff") has purchased several automobiles manufactured by Defendant Ford Motor Company ("Ford" or "Defendant"): a 1956 Ford panel truck, a 1993 Ford Escort, a 1988 Mercury Cougar, a 1994 Ford Ranger and a 1987 Ford Bronco.  Am. Compl. ¶¶ 5-10.  McCracken alleges that there is normally a low level of radiation in the ambient air, but that when traveling in his Ford automobiles at speeds of 65-70 miles per hour, those levels increase exponentially.[1]  Am. Compl. ¶¶ 22, 24.  On May 19, 2005, McCracken was diagnosed with thyroid cancer.  McCracken maintains that his thyroid cancer was caused by "the great quantities of highly radioactive material circulating through the windshield [and] engine compartment" in his Ford vehicles.  Am. Compl. ¶ 38.  On May 17, 2007,

---

[1] McCracken used a dosimeter to take measurements of radiation while driving his Ford vehicles and observed an increase of 2.0 Roentgens per day to as much as 10.0 Roentgens per day after driving 100-300 miles.  Am. Compl. ¶ 24.

McCracken filed a complaint against Ford and Ford executives William Clay Ford (Chief Executive Officer), John Doe (Vice President of Marketing) and John Doe I (Vice President of Engineering), (collectively, the "Ford Defendants").[2]  Compl. ¶¶ 11-27, 28-30.  On January 7, 2008, McCracken amended his complaint, adding as defendants Ford dealers J.L. Freed, Chapman Ford, and Checker Flag Inc., from whom he purchased his Ford vehicles (the "Dealer Defendants").  Plaintiff asserts causes of action based on theories of (1) strict liability in tort, (2) attractive nuisance, (3) breach of warranty of merchantability, (4) failure to warn, (5) negligence, (6) omissions and false misrepresentations of merchantability, (7) defective design, (8) intentional infliction of emotional distress, assault, and battery, and (9) automobile dealer liability for breach of warranty of merchantability, breach of implied warranty of merchantability, intentional infliction of emotional distress, strict liability, and assault and battery.  Am. Compl. ¶¶ 18-60.

On August 12, 2008, I dismissed Plaintiff's claims against the Dealer Defendants as barred by the statute of limitations.  (See Explanation and Order filed on August 13, 2008 (Doc. #32)). On March 24, 2008, Ford Motor Company separately filed a motion to dismiss arguing (1) that Plaintiff's claims are barred by the statute of limitations, (2) Plaintiff's claims are preempted by federal law, and (3) Plaintiff's complaint fails to state a claim upon which relief can be granted

---

[2]McCracken brings his claims pursuant to the court's diversity jurisdiction, although there remains some ambiguity as to whether diversity exists.  Ford is a Delaware corporation, headquartered in Michigan, doing business in Pennsylvania.  McCracken claims to have "resided principally in the eastern district of Pennsylvania" for the last 10 years, but the signature line in his complaint indicates a Delaware address.  The docket, however, reflects a Pennsylvania address for Plaintiff.  The Court may raise the issue of jurisdiction at any point in the litigation; however, Defendants did not challenge McCracken's citizenship and claim of diversity, and I will not do so at this time.

under Fed. R. Civ. P. 12(b)(6).[3] For the following reasons, I grant in part and deny in part the Ford Defendants' motion to dismiss.

**II.     Discussion**

1. Dismissal Under the Statute of Limitations

Pennsylvania has a two-year statute of limitations for assault, battery, and personal injury actions. 42 Pa. C.S. § 5524 (2007)  Ford argues that McCracken's personal injury claims should be barred by the statute of limitations because McCracken was diagnosed with thyroid cancer on May 19, 2005; and he filed his complaint on May 21, 2007, over two years later.  As I explained in my previous Explanation and Order (Doc. # 32), even though the docket indicates that the complaint was filed on May 21, 2007, the complaint is considered constructively filed on May 17, 2007, the date when Plaintiff submitted it with a petition to proceed in forma pauperis.  See McDowell v. Del. St. Police, 88 F.3d 188, 190-191 (3d Cir. 1996) (complaint constructively filed on date received by Clerk's Office, so long as in forma pauperis status eventually granted).  The constructive-filing date is the relevant filing date for statute-of-limitations purposes. Id.  Because McCracken was diagnosed with thyroid cancer on May 19, 2005,[4] the two-year statute of limitations for claims related to that injury expired on May 19, 2007.  McCracken's complaint

---

[3] Defendants William Clay Ford, Chief Executive Officer, John Doe, Vice President of Marketing, and John Doe I, Vice President of Engineering are represented by counsel to Ford Motor Company; therefore, Ford's motion to dismiss shall be considered submitted on behalf of all Ford Defendants.

[4] In Plaintiff's Affidavit in Opposition to Ford Motor Company's Motion for Dismissal ("Opposition") McCracken maintains that even though he took the ultrasound that discovered his thyroid cancer on May 19, 2005, he did not receive his diagnosis until June 6, 2005.  However, this fact does not change the outcome in this case: the complaint is still timely whether the diagnosis occurred on May 19th or June 6th.

3

was constructively filed on May 17, 2007. Therefore, his complaint was filed within the applicable statute of limitations and Plaintiff's personal injury claims cannot be dismissed on those grounds.

2. Dismissal Under Rule 12(b)(6)

The Ford Defendants also move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The complaint "does not need detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). This means that the allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. Those allegations must be viewed in the light most favorable to the plaintiff. Francis v. Mineta, 505 F.3d 266, 267 n.1 (3d Cir. 2007). A court must also keep in mind the overarching command to construe a pro se complaint more liberally than documents drafted by lawyers. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). A motion to dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff would not be entitled to relief under any reasonable reading of the complaint. Brown v. Card Service Center, 464 F.3d 450, 452 (3d Cir. 2006).

    A.    *Strict Product Liability and Defective Design*[5]

---

[5] Plaintiff's Strict Liability in Tort Claim (Count I) is the substantively the same as Plaintiff's Defective Design Claim (Count VI) and they will be dealt with here as one claim. Both Count I and Count VI allege that Ford breached its duty to Plaintiff by designing and manufacturing a motor vehicle that was unreasonably dangerous in that the vehicle was not constructed to protect Plaintiff against the radiation exposure that allegedly caused his thyroid cancer.

McCracken contends that Ford's vehicles have a defective design because "the vehicle provides no protection against ionizing radiation." Plaintiff's Opposition to Motion to Dismiss ("Opposition") at 1. More specifically, McCracken alleges that Ford defectively designed their vehicles by using plate glass windshields instead of using Dupont brand Lucite or "clear glass containing lead." Am. Compl. ¶ 51. Plaintiff maintains that putting lead materials in the windshield would have provided a barrier to ionized and gamma radiation, unlike the glass used by Ford. Am. Compl. ¶¶ 31, 51.

Ford argues that McCracken's product liability claims are preempted by federal law, specifically, by Federal Motor Vehicle Safety Standard ("FMVSS") 205.[6] 49 CFR 571.205. FMVSS 205 sets forth specific requirements for the glazing materials that can be used in motor vehicles. Id. The purpose of FMVSS 205 is "to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in collisions." Id. at S2. FMVSS 205 incorporates by reference the American National Standard for Safety Glazing Materials for Glazing Motor Vehicles and Motor Vehicle Equipment Operating on Land Highways-Safety Standard ANSI/SAE Z26.1-1996. This standard specifies that only glazing materials that have passed certain safety tests can be used in windshields. ANSI/SAE Z26.1-1996 at 13.

The Federal Motor Vehicle Safety Standards are promulgated under the National Motor Vehicle Safety Act ("Safety Act"). In Geier v. American Honda Motor Co., the Supreme Court

---

[6] The Supremacy Clause of the United States Constitution empowers Congress to preempt state law (1) when Congress expressly preempts state law, (2) where preemption is implied because Congress has occupied the entire field, and (3) where preemption is implied because there is an actual conflict between federal and state law. U.S. Const. Art. VI. CL. 2; Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300 (1988).

clarified when state tort law claims are preempted by the Safety Act. 529 U.S. 861, 867-74 (2000). The Supreme Court held that where the Safety Act creates only a minimum safety standard, state tort law would not be preempted. Id. However, if a state law tort claim conflicts with a mandatory safety standard promulgated under the Safety Act, the state tort claim would be preempted. Id.; Blacker v. Oldsmobile Division, 869 F. Supp. 313, 314 (E.D.Pa. 1994) (explaining that FMVSS "are promulgated with the force of law and may preempt product liability actions in some circumstances."). FMVSS 205 is a mandatory federal government requirement promulgated under the Safety Act, not a minimum standard as Plaintiff argues. 49 CFR 571.205 at S5.1 ("Glazing materials for use in motor vehicles must conform to ANSI/SAE Z26.1-1996 unless this standard provides otherwise."); See also Blacker, 869 F. Supp. at 314 ("FMVSS are mandatory federal standards expressly intended to enhance the safety of automobiles."). Therefore, following Geier, if Plaintiff's state law tort claim conflicts with the mandatory requirements of FMVSS 205, Plaintiff's claims are preempted by those federal regulations. 529 U.S. at 867-74.

     Plaintiff's claim is that Ford should have used Lucite or clear glass containing lead in its windshields. Assuming the allegations of the complaint are true as required under Rule 12(b)(6), I must accept Plaintiff's contention that Lucite is a type of glass, even if doubtful in fact. See Am. Compl. ¶¶ 26, 31, 51. Some types of glass are approved for use as windshields under FMVSS 205 (incorporating by reference ANSI/SAE Z26.1-1996). For example, glass-plastic glazing materials may be used in the windshields of some types of vehicles and laminated glass may be used for windshields in all types of motor vehicles. ANSI/SAE Z26.1-1996 at 10-13. It is only rigid plastics, flexible plastics, annealed glass-plastic, and tempered glass-plastic that are not

permitted for use in automobile windshields. Id. at 10-11. Thus, if Plaintiff could demonstrate that Lucite or clear glass containing lead were approved glazing materials under FMVSS 205, Plaintiff's state law tort claim would not conflict with federal law and would not be preempted. Plaintiff's complaint does not make any claim that Lucite or clear glass containing lead are approved materials under ANSI/SAE Z26.1-1996 and FMVSS 205. However, Ford has not submitted any evidence to refute Plaintiff's claim that Lucite is a material that could possibly be approved for use as a windshield under those regulations.[7] Because the allegations in the Complaint are insufficient to allow a determination that Lucite is not an approved glazing material, I must at this time deny Defendant's motion to dismiss Plaintiff's state law tort claims as preempted by federal law. However, the Ford Defendants may present evidence at a later stage in the litigation that Lucite is not a glazing material approved for use under FMVSS 205. Defendants may also present evidence with respect to Plaintiff's other defective design claims that Ford failed to put "lead shielding in the front of the vehicle so to avoid receiving the blunt force of the radiation" (Am. Compl. ¶ 26) and that Ford failed to "appropriately heighten the dashboard." (Am. Compl. ¶ 49).

  B. *Breach of Warranty of Merchantability*

McCracken claims that Ford advertises its automobiles as having the capacity for quick acceleration and high speed travel, thereby creating an implied warranty of merchantability that the automobile is safe to drive at high speeds, when in fact travel at 65-70 miles per hour exposes passengers to dangerous levels of cancer-causing radiation. Am. Compl. ¶¶ 32, 36-38.

---

  [7]Defendants maintain that only laminated glass may be used in windshields, but Defendants did not submit any evidence that Lucite or clear glass containing lead were not a type of laminated glass. Motion to Dismiss at 6.

Although the Federal Rules of Civil Procedure indicate that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). In this case, it is clear on the face of the pleading that Plaintiff's warranty of merchantability claim is time-barred. Under Pennsylvania law, the statute of limitations for breach of an implied warranty is four (4) years. 13 Pa.C.S.A. §§ 2725 (a), (b). The statute of limitations period begins at the time of the tender or sale of the allegedly defective product and not at the time the breach is discovered or an injury occurs. Id. See also, Nationwide Ins. Co. v. General Motors Corp., 533 Pa. 423, 427, 625 A.2d 1172 (1992) ("[A] breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered."). The tort discovery rule does not apply to breach of warranty actions so as to permit a tolling of the statute of limitations from the date the injury is discovered. Id.

In his complaint, McCracken alleges that he made purchases of Ford cars or trucks in 1972, 1997, 1998 and 1999. (Am. Compl. ¶¶ 6-10). Thus, the statute of limitations on his claim for breach of the implied warranty of merchantability expired in 2003, four years after his most recent Ford car purchase. McCracken filed this action on May 17, 2005, roughly six years after his most recent Ford car purchase, and clearly beyond the statute of limitations. Accordingly, McCracken's claim for breach of the implied warranty of merchantability is dismissed with

prejudice as to all Ford Defendants.[8]

    C.    *Attractive Nuisance*

McCracken claims that Ford failed to use construction materials in its automobiles that would protect against radiation exposure and therefore Ford created an attractive nuisance that was the proximate cause of his thyroid cancer. Am. Compl. ¶ 32. The "attractive nuisance" doctrine is a theory of liability limited to landowners in cases where a child trespasser has been injured by an artificial structure on the land which is both attractive and dangerous to children. See Estate of Zimmerman v. SEPTA, 168 F.3d 680, 688 (3d Cir. 1999) (explaining that "the attractive nuisance doctrine is limited to instances in which children unlawfully enter or remain on land"); Cousins v. Yeager, 394 F.Supp. 595, 604 (E.D. Pa. 1975). McCracken's complaint contains no allegations whatsoever of trespass, injury to children, or an artificial structure on land. I therefore dismiss Plaintiff's attractive nuisance claim as to all Ford Defendants.

    D.    *Failure to Warn*

McCracken alleges that the Defendants had a duty to warn him of the danger that operating Ford vehicles at high speeds would increase his exposure to harmful radiation. To state a claim for failure to warn, McCracken must allege that (1) the defendant had a duty to warn the plaintiff, (2) defendant breached that duty, (3) the breach actually caused plaintiff's injury, and (4) the breach proximately caused plaintiff's injury. See Mazur v. Merck & Co., 767 F. Supp. 697, 701 (E.D.Pa. 1991). McCracken asserts that Ford had a "corporate responsibility to inform the consumer (i.e. plaintiff) of the deadly consequences of using their vehicles." Am. Compl. ¶ 32.

---

[8] Plaintiff alleges a breach of warranty of merchantability twice in his Amended Complaint. See Am. Compl. at ¶ 32 and ¶¶ 36-42. Both of these claims are dismissed as time-barred.

However, without more, McCracken's allegations are too conclusory to support his claim that Ford had a legal duty to warn McCracken about the danger that traveling at high speeds would increase the level of radiation in the vehicle.  Even assuming that Ford did have a duty to warn McCracken about radiation exposure, Plaintiff has not set forth sufficient facts to identify how Ford breached that duty, or how Ford's alleged failure to warn was the proximate cause of Plaintiff's injury.  Accordingly, McCracken's claim for failure to warn is dismissed.

    E.    *Negligence*

McCracken alleges that the Ford Defendants were grossly negligent in the manufacture, design, assembly, distribution and sale of Ford automobiles in that the automobiles were not safe for their intended purpose.  Am. Compl. ¶ 33.  McCracken further contends that Ford was grossly negligent in failing to warn him as to the reasonably foreseeable dangers of operating the vehicles in city and highway driving conditions, failing to give sufficient instruction on the proper use and maintenance of the vehicles, and failing to test or inspect the vehicles to determine whether they could be used safely.  Am. Compl. ¶ 35.

A negligence claim can only lie where the defendant has a legal duty to the plaintiff.  Legal duty has been described as "an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person." Bradshaw v. Rawlings, 612 F.2d 135, 138 (3d Cir. 1979), cert. denied, 446 U.S. 909 (1980).  Even where a legal duty exists, conduct is only negligent if the harm flowing from the conduct could reasonably have been foreseen and prevented by the exercise of reasonable care.  Estate of Florence Silverman Aptekman v. City of Philadelphia, 2001 WL 1486350 at *3 (E.D.Pa. Nov. 21, 2001) (not reported) (citing Mohler v. Jeke, 407 Pa.Super. 478, 595 A.2d 1247, 1252

(Pa.Super.Ct. 1991).

Plaintiff has not alleged that Ford owed him any legal duty to make vehicles able to protect against ambient radiation exposure. Further, even if a duty did exist, McCracken fails to allege any facts to support a claim that Ford could reasonably have foreseen that its automobiles increased exposure to radiation, or that Ford could could have prevented radiation exposure by reasonable case. McCracken asserts only that "Ford Motor Company knew or with due diligence should have known that the low-level radiation fall-out would multiply exponentially in dosage when operating their motor vehicles on the highway." Am. Compl. ¶ 46. It is not enough for McCracken to state legal conclusions in his complaint. Absent more specific pleadings, Plaintiff's negligence claims must be dismissed.

   F. *Omissions and False Misrepresentations of Merchantability*

McCracken alleges that Ford Motor Company misrepresented that their vehicles are safe when, in fact, they are extremely hazardous to drive. Am. Compl. ¶ 47. More specifically, McCracken claims that Ford regularly advertised its products on television without warning the consumer that a dosimeter should be used to monitor the radiation in the ambient air before, during and after using Ford vehicles. Am. Compl. ¶ 48. In Pennsylvania, a prima facie case of fraudulent misrepresentation consists of five elements: (1) a misrepresentation, (2) a fraudulent utterance of the misrepresentation, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result. Mellon Bank v. First Union Real Estate Equity & Mortg. Investments, 951 F.2d 1399, 1409 (3d Cir. 1991). When alleging fraud or mistake, plaintiffs are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule

9(b) requires a plaintiff to use specificity in pleading intentional misrepresentation in order to give defendants sufficient notice of the claims against them. Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004) ("[P]laintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged.").

In his Amended Complaint, McCracken claims that Ford misrepresented the safety of their vehicles "using semantics, graphics and video" as well as "in NASCAR racing and other television broadcasts." Am. Compl. ¶¶ 47-48.  McCracken does not allege the date, place or time of these misrepresentations, what the content of the misrepresentations were, whether he relied on them when purchasing his Ford vehicles, or how any such reliance was justified.  McCracken has failed to plead with sufficient particularity the facts and circumstances surrounding the alleged misrepresentations as required by Rule 9(b).  Accordingly, McCracken's false representation and omission claims are dismissed as to all Ford Defendants.

### G. *Intentional Infliction of Emotional Distress*

McCracken claims that the Ford Defendants committed "intentional infliction of emotional distress, assault and battery" by failing to warn Plaintiff of the dangers of driving Ford vehicles at high speeds and failing to install certain components or safety features to minimize the exposure to radiation that occurs when driving Ford automobiles at speeds in excess of 60 miles per hour.  Am. Compl. ¶ 54.

To make out a claim for emotional distress under Pennsylvania law, a plaintiff must allege that defendant engaged in extreme and outrageous conduct and either intentionally or recklessly caused Plaintiff severe emotional distress.  See Robinson v. May Dep't Stores Co., 246 F. Supp.

2d 440, 444 (E.D. Pa. 2003). Extreme and outrageous conduct is conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988). The plaintiff must also establish physical injury or harm. Robinson v. May Dep't Stores Co., 246 F. Supp. 2d at 444.

McCracken has failed to allege that Ford engaged conduct so extreme or outrageous as to go beyond the bounds of decency. McCracken further fails to allege any physical manifestation of severe emotional distress. McCracken only states that Ford's alleged actions in constructing a hazardous vehicle "constitute intentional infliction of emotional distress." Am. Compl. ¶ 54. This statement alone is insufficient to state a claim for intentional infliction of emotional distress. Accordingly, Plaintiff's claims for intentional infliction of emotional distress are dismissed as to all Ford Defendants.

> H. *Assault and Battery*

McCracken has also failed to allege facts sufficient to support his claims for assault or for battery. Under Pennsylvania law, the tort of assault is "an intentional attempt by force to do any injury to the person of another." Essex Ins. Co. v. Starlight Mgmt. Co., 198 Fed. Appx. 179, 183 (3d Cir. 2006); Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994). A battery occurs "whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Id. In both assault and battery, the actor must *intend* contact. McCracken's complaint alleges that Ford "knew or should have known" about the toxic exposure in their automobiles, but the complaint lacks any allegation that Ford intentionally or deliberately exposed him to radiation or caused his thyroid cancer. Therefore, McCracken's claims for assault

and/or battery are dismissed for failure to state a claim.

> I.  *Automobile Dealer Liability for Breach of Warranty of Merchantability, Breach of Implied Warranty of Merchantability, Intentional Infliction of Emotional Distress, Strict Liability, and Assault and Battery.*

To the extent that these allegations are directed against the Dealer Defendants, those claims have already been dismissed as time-barred pursuant to my Explanation and Order dated August 13, 2008.  To the extent that McCracken is making these allegations against Ford in its capacity as an automobile dealer, they are dismissed as to all Ford Defendants consistent with the analysis discussed above.

### III.  Conclusion

For the reasons set forth above, I will deny Defendant Ford Motor Company's Motion to Dismiss with respect to Plaintiff's strict product liability and defective design claims only.  The remainder of Plaintiff's claims are dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TED MCCRACKEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 07-CV-2018 |
| | : | |
| FORD MOTOR CO. et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this __4th___ day of October, 2008, upon consideration of Defendant Ford Motor Company's Motion to Dismiss (Doc. #9), Plaintiff's Affidavit in Opposition (Doc. #13), and Defendant's Reply (Doc. #15), it is **ORDERED** that Defendant Ford Motor Company's Motion to Dismiss (Doc. # 9) is **GRANTED** in part and **DENIED** in part as stated in the accompanying Explanation.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to: